UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America ) | Case # 3: 12 cr 264   (VLB) |
| plaintiff, ) | |
| vs. ) | Memorandum of Law in support of Motion |
| ) | to Dismiss for prosecutorial misconduct |
| John Cote and Sandra Cote, ) | submitted May 9th 2013 |
| ) | |
| Alleged defendants ) | |
| ) | |

Now Comes Sandra Cote, alleged defendant, to supply the court with case law relied upon by John Cote and Sandra Cote in their defense requested by Judge Bryant on April 23rd, 2013

Even though there is no law provided by the government that I can find that makes either me or my husband liable for an income tax, required to pay an income tax, required to fill out an income tax form or that makes the internal revenue code applicable to me, nor did the government provide any facts nor could I find any facts that make the constitution apply to me, I did find the following case law that I believe is relevant:

Congress has taxed INCOME, not compensation."- [Conner v. U.S., 303 F Supp. 1187 (1969)] [emphasis added]

"Income within the meaning of the 16th Amendment and the Revenue Act means, gain ... and, in such connection, gain means profit... proceeding from property severed from capital, however invested or employed and coming in, received or drawn by the

taxpayer for his separate use, benefit and disposal." - [Staples v. U.S., 21 F Supp 737 U.S. Dist. Ct. ED PA, 1937] -

"There is a clear distinction between `profit' and `wages', or a compensation for labor. Compensation for labor (wages) cannot be regarded as profit within the meaning of the law. The word `profit', as ordinarily used, means the gain made upon any business or investment -- a different thing altogether from the mere compensation for labor." [Oliver v. Halstead, 86 S.E. Rep 2nd 85e9 (1955)] -

"The claim that salaries, wages, and compensation for personal services are to be taxed as an entirety and therefore must be returned by the individual who has performed the services which produce the gain is without support, either in the language of the Act or in the decisions of the courts construing it. Not only this, but it is directly opposed to provisions of the Act and to regulations of the U.S. Treasury Department, which either prescribed or permits that compensations for personal services not be taxed as a entirety and not be returned by the individual performing the services. It is to be noted that, by the language of the Act, it is not salaries, wages, or compensation for personal services that are to be included in gains, profits, and income derived from salaries, wages, or compensation for personal services."- [Lucas v. Earl, 281 U.S. 111 (1930)] –

"... whatever may constitute income, therefore, must have the essential feature of gain to the recipient. This was true when the 16th Amendment became effective, it was true at the time of Eisner v. Macomber Supra, it was true under Section 22(a) of the Internal Revenue Code of 1938, and it is likewise true under Section 61(a) of the I.R.S. Code of

1954. If there is not gain, there is not income ... Congress has taxed income not compensation."- [Conner v. U.S., 303 F Supp. 1187 (1969)]

Edwards (vs) Keith, 231 F110, 113 (1916) Stated: "The phraseology of form 1040 is somewhat obscure .... But it matters little what it does mean; the statute and the statute alone determines what is income to be taxed. It taxes only income "derived" from many different sources; one does not "derive income" by rendering services and charging for them... IRS cannot enlarge the scope of the statute."

State court rulings coincide with the Federal courts. "... reasonable compensation for labor or services rendered is not profit."- [Lauderdale Cemetary Assoc. v. Mathews, 345 PA 239; 47 A. 2d 277, 280 (1946)] -

"There is a clear distinction between profit and wages, or compensation for labor. Compensation for labor cannot be regarded as profit within the meaning of the law." - [Oliver v. Halstead, 196 VA 992; 86 S.E. 2d 858 (1955

Cox (vs) Louisiana, 379 US 559, 85 S Ct. 476 (1965) States that an American Citizen such as the Defendant has a right to rely upon representations and statements made by the government and appearing in official publications.

Economy Plumbing & Heating (vs) U.S., 456 F.2d. 713 Stated that the revenue laws apply to taxpayers, and NOT to nontaxpayers. No procedure is prescribed for nontaxpayers. Congress does not assume to deal with nontaxpayers, neither are they the subject of nor object of revenue laws.

Silence can only be equated with fraud where there is a legal or moral duty to speak, or where an inquiry left unanswered would be intentionally misleading. . . We cannot

condone this shocking behavior by the IRS. Our revenue system is based on the good faith of the taxpayer and the taxpayers should be able to expect the same from the government in its enforcement and collection activities." U.S. v. Tweel, 550 F.2d 297, 299. See also U.S. v. Prudden, 424 F.2d 1021, 1032; Carmine v. Bowen, 64 A. 932.

"Keeping in mind the well settled rule, that the citizen is exempt from taxation, unless the same is imposed by clear and unequivocal language, and that where the construction of a tax is doubtful, the doubt is to be resolved in favor of those upon whom the tax is sought to be laid." Spreckles Sugar Refining Co. vs. McLain: 192 US 397

(Discussing the 16th Amendment)

"It is clear on the face of this text that it does not purport to confer power to levy income taxes in a generic sense an authority already possessed and never questioned or to limit and distinguish between one kind of income taxes and another, but that the whole purpose of the Amendment was to relieve all income taxes when imposed from apportionment from a consideration of the source whence the income was derived" Brushaber vs. Union Pacific RR 240 US 1

"for 'income' may be defined as the gain derived from capital, from labor, or from both combined, and here we have combined operations of capital and labor." Stratton's Independence vs. Howbert 231 US 406

Emanuel J. Doyle vs. Mitchell Brothers Company 247 US 179 "Yet it is plain, we think, that by the true intent and meaning of the Act the entire proceeds of a mere conversion of capital assets were not to be treated as income. Whatever difficulty there may be

about a precise and scientific definition of 'income' it imports, as used here, something entirely distinct from principal or capital either as a subject of taxation or as a measure of the tax; conveying rather the idea of gain or increase arising from corporate activities. As was said in Stratton's Independence vs. Howbert, 231 U.S. 399, 415: 'Income may be defined as the gain derived from capital, from labor, or from both combined.'"

Southern Pacific Company vs. John Z. Lowe, Jr: 247 US 330 "We must reject in this case, as we have rejected in cases arising under the Corporation Excise Tax Act of 1909 (Doyle v. Mitchell Brothers Co., ante, 179 and Hays v. Gauley Mountain Coal Co., ante, 189) the broad contention submitted in behalf of the Government that all receipts everything that comes in are income within the proper definition of the term 'gross income,' and that the entire proceeds of a conversion of capital assets, in whatever form and under whatever circumstances accomplished should be treated as gross income. Certainly the term 'income' has no broader meaning in the 1913 Act than in that of 1909 (see Stratton's Independence v. Howbert, 231 U.S. 399, 416, 417), and for the present purpose we assume there is no difference in its meaning as used in the two acts."

Mark Eisner vs. Myrtle H. Macomber 252 US 189 "After examining dictionaries in common use (Bouv. L.D.; Standard Dict.; Webster's Internat. Dict.; Century Dict.), we find little to add to the succinct definition adopted in two cases arising under the Corporation Tax Act of 1909 (Stratton's Independence v. Howbert, 231 U.S. 399, 415; Doyle v. Mitchell Bros. Co, 247 U.S. 179, 185) "Income may be defined as the gain derived from capital, from labor, or from both combined," provided it be understood to

include profit gained through a sale or conversion of capital assets, to which it was applied in the Doyle Case (pp. 183, 185)

Merchant's Loan & Trust Company vs. Smietanka 255 US 509 "It is obvious that these decisions in principle rule the case at bar if the word 'income' has the same meaning as the Income Tax Act of 1913 that it had in the Corporation Excise Tax Act of 1909, and that it has the same scope of meaning was in effect decided in Southern Pacific Co. v. Lowe, 247 U.S. 330, 335, where it was assumed for the purposes of decision that there was no difference in its meaning as used in the Act of 1909 and in the Income Tax Act of 1913. There can be no doubt that the word must be given the same meaning and content in the Income Tax Acts of 1916 and 1917 that it had in the Act of 1913. When to this we add that in Eisner v. Macomber, Supra, arising under the Corporation Excise Tax Act of 1909, with the addition that it should include 'profit gained through a sale or conversion of capital assets,' there would seem to be no room to doubt that the word must be given the same meaning in all of the Income Tax Acts of Congress that was given to it in the Corporation Excise Tax Act and that what that meaning is has now become definitely settled by decisions of this court.

Burnet vs. Harmel 287 US 103 "before the 1921 Act this Court had indicated (see Eisner v. Macomber, 252 U.S. 189, 207, 64L.ed 521, 9 A.L.R. 1570, 40 S. Ct. 189), what it later held, that 'income,' as used in the revenue acts taxing income, adopted since the 16th Amendment, has the same meaning that it had in the Act of 1909. Merchants; Loan & T. Co. v. Smietanka, 255 U.S. 509, 519, 65 L.ed. 751, 755, 15 A.L.R. 1305, 41 S. Ct. 386; see Southern Pacific Co. v. Lowe. 247 U.S. 330, 335, 62 L.ed. 114, 1147, 38 S. Ct. 540."

6

<u>1818</u>: U.S. v. Bevans, 16 U.S.336. Establishes two separate jurisdictions within the United States Of America: 1. The "federal zone" and 2. "the 50 States". The I.R.C. only has jurisdiction within the "federal zone". "The exclusive jurisdiction which the United States have in forts and dock-yards ceded to them, is derived from the express assent of the states by whom the cessions are made. It could be derived in no other manner; because without it, the authority of the state would be supreme and exclusive therein," 3 Wheat., at 350, 351.

<u>1883</u>: Butchers' Union Co. v. Crescent City Co., 111 U.S. 746. Defines labor as property, and the most sacred kind of property. "Among these unalienable rights, as proclaimed in the Declaration of Independence is the right of men to pursue their happiness, by which is meant, the right any lawful business or vocation, in any manner not inconsistent with the equal rights of others, which may increase their prosperity or develop their faculties, so as to give them their highest enjoyment...It has been well said that, THE PROPERTY WHICH EVERY MAN HAS IS HIS OWN LABOR, AS IT IS THE ORIGINAL FOUNDATION OF ALL OTHER PROPERTY SO IT IS THE MOST SACRED AND INVIOLABLE..."

<u>1894</u>: Caha v. United States, 152 U.S. 211. Restricts jurisdiction of the federal government inside the states. "The law of Congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government."

<u>1895</u>: Pollack v. Farmer's Loan and Trust Company, 157 U.S. 429, 158 U.S. 601.Prohibits direct taxes on the income of individuals.

**1900:** Knowlton v. Moore, 178 U.S. 41. Defines the meaning of "direct taxes". "Direct taxes bear immediately upon persons, upon the possession and enjoyment of rights; indirect taxes are levied upon the happening of an event as an exchange."

**1901:** Downes v. Bidwell, 182 U.S. 244. Establishes that constitutional limits on the Congress do not apply within the "federal zone" and described where they do apply. "CONSTITUTIONAL RESTRICTIONS AND LIMITATIONS [Bill of Rights] WERE NOT APPLICABLE to the areas of lands, enclaves, territories, and possessions over which Congress had EXCLUSIVE LEGISLATIVE JURISDICTION"

**1906:** Hale v. Henkel, 201 U.S. 43. Defined the distinction between natural persons and corporations as it pertains to 5th Amendment protections within the U.S. Constitution. "...we are of the opinion that there is a clear distinction in this particular between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for an examination at the suit of the state. The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the state or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to criminate him. He owes no such duty to the state, since he receives nothing therefrom, beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the state, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his rights are a refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under a warrant of

the law. He owes nothing to the public so long as he does not trespass upon their rights.

Upon the other hand, the corporation is a creature of the state. It is presumed to be incorporated for the benefit of the public. It receives certain special privileges and franchises, and holds them subject to the laws of the state and the limitations of its charter. Its powers are limited by law. It can make no contract not authorized by its charter. Its rights to [201 U.S. 43, 75] act as a corporation are only preserved to it so long as it obeys the laws of its creation.

There is a reserved right in the legislature to investigate its contracts and find out whether it has exceeded its powers. It would be a strange anomaly to hold that a state, having chartered a corporation to make use of certain franchises, could not, in the exercise of its sovereignty, inquire how these franchises had been employed, and whether they had been abused, and demand the production of the corporate books and papers for that purpose. The defense amounts to this: That an officer of a corporation which is charged with a criminal violation of the statute, may plead the criminality of such corporation as a refusal to produce its books. To state this proposition is to answer it. While an individual may lawfully refuse to answer incriminating questions unless protected by an immunity statute, it does not follow that a corporation, vested with special privileges and franchises, may refuse to show its hand when charged with an abuse of such privileges. "

1911: Flint v. Stone Tracy Co., 220 U.S. 107. Defined excise taxes as taxes laid on corporations and corporate privileges, not in natural persons. "Excises are taxes laid upon the manufacture, sale or consumption of commodities within the country, upon

licenses to pursue certain occupations and upon corporate privileges...the requirement to pay such taxes involves the exercise of [220 U.S. 107, 152] privileges, and the element of absolute and unavoidable demand is lacking...Conceding the power of Congress to tax the business activities of private corporations.. the tax must be measured by some standard...It is therefore well settled by the decisions of this court that when the sovereign authority has exercised the right to tax a legitimate subject of taxation as an exercise of a franchise or privilege, it is no objection that the measure of taxation is found in the income produced in part from property which of itself considered is nontaxable."

1914: Weeks v. U.S., 232 U.S. 383. Established that illegally obtained evidence may not be used by the court or admitted into evidence. This case is very useful in refuting the use by the IRS of income tax returns that were submitted involuntarily (note that these returns must say "submitted under compulsion in violation of 5th Amendment rights" or some such thing at the bottom.

"The effect of the 4th Amendment is to put the courts [232 U.S. 383, 392] of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often

10

obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.

The case in the aspect in which we are dealing with it involves the right of the court in a criminal prosecution to retain for the purposes of evidence the letters and correspondence of the accused, seized in his house in his absence and without his authority, by a United States marshal holding no warrant for his arrest and none for the search of his premises. The accused, without awaiting his trial, made timely application to the court for an order for the return of these letters, as well or other property. This application was denied, the letters retained and put in evidence, after a further application at the beginning of the trial, both applications asserting the rights of the accused under the 4th and 5th Amendments to the Constitution. If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the 4th Amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established be years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land. The United States marshal could only have invaded the house of the accused when armed with a warrant issued as required by the Constitution, upon sworn information, and describing with reasonable particularity the thing for which the

search was to be made. Instead, he acted without sanction of law, doubtless prompted by the desire to bring further proof to the aid of the government, and under color of his office undertook to make a seizure of private papers in direct violation of the constitutional prohibition against such action. Under such circumstances, without sworn information and particular description, not even an order of court would [232 U.S. 383, 394] have justified such procedure; much less was it within the authority of the United States marshal to thus invade the house and privacy of the accused.

In Adams v. New York, 192 U.S. 585 , 48 L. ed. 575, 24 Sup. Ct. Rep. 372, this court said that the 4th Amendment was intended to secure the citizen in person and property against unlawful invasion of the sanctity of his home by officers of the law, acting under legislative or judicial sanction. This protection is equally extended to the action of the government and officers of the law acting under it.

Boyd Case, 116 U.S. 616 , 29 L. ed. 746, 6 Sup. Ct. Rep. 524. To sanction such proceedings would be to affirm by judicial decision a manifest neglect, if not an open defiance, of the prohibitions of the Constitution, intended for the protection of the people against such unauthorized action.

1916: Brushaber vs. Union Pacific Railroad, 240 U.S. 1. Established that the 16th Amendment had no affect on the constitution, and that income taxes could only be sustained as excise taxes and not as direct taxes.

"...the proposition and the contentions under [the 16th Amendment]...would cause one provision of the Constitution to destroy another; That is, they would result

12

in bringing the provisions of the Amendment exempting a direct tax from apportionment into irreconcilable conflict with the general requirement that all direct taxes be apportioned;

This result, instead of simplifying the situation and making clear the limitations of the taxing power, which obviously the Amendment must have intended to accomplish, would create radical and destructive changes in our constitutional system and multiply confusion.

Moreover in addition the Conclusion reached in the Pollock Case did not in any degree involve holding that income taxes generically and necessarily came within the class of direct taxes on property, but on the contrary recognized the fact that taxation on income was in its nature an excise entitled to be enforced as such unless and until it was concluded that to enforce it would amount to accomplishing the result which the requirement as to apportionment of direct taxation was adopted to prevent, in which case the duty would arise to disregard form and consider substance alone and hence subject the tax to the regulation as to apportionment which otherwise as an excise would not apply to it.

....the Amendment demonstrates that no such purpose was intended and on the contrary shows that it was drawn with the object of maintaining the limitations of the Constitution and harmonizing their operation."

....the [16th] Amendment contains nothing repudiating or challenging the ruling in the Pollock Case that the word direct had a broader significance since it embraced also taxes levied directly on personal property because of its ownership, and therefore the Amendment at least impliedly makes such wider significance a part of the

Constitution -- a condition which clearly demonstrates that the purpose was not to change the existing interpretation except to the extent necessary to accomplish the result intended, that is, the prevention of the resort to the sources from which a taxed income was derived in order to cause a direct tax on the income to be a direct tax on the source itself and thereby to take an income tax out of the class of excises, duties and imposts and place it in the class of direct taxes...

Indeed in the light of the history which we have given and of the decision in the Pollock Case and the ground upon which the ruling in that case was based, there is no escape from the Conclusion that the Amendment was drawn for the purpose of doing away for the future with the principle upon which the Pollock Case was decided, that is, of determining whether a tax on income was direct not by a consideration of the burden placed on the taxed income upon which it directly operated, but by taking into view the burden which resulted on the property from which the income was derived, since in express terms the Amendment provides that income taxes, from whatever source the income may be derived, shall not be subject to the regulation of apportionment.

1916: Stanton v. Baltic Mining, 240 U.S. 103. Declared that the 16th Amendment conferred no new powers of taxation to the U.S. government, but simply prevented income taxes from being taken out of the category of indirect (excise) taxes to which they inherently belonged. "..by the previous ruling it was settled that the provisions of the Sixteenth Amendment conferred no new power of taxation but simply prohibited the previous complete and plenary power of income taxation possessed by Congress from the beginning from being taken out of the category of indirect taxation to which it

inherently belonged and being placed in the category of direct taxation subject to apportionment by a consideration of the sources from which the income was derived, that is by testing the tax not by what it was – a tax on income, but by a mistaken theory deduced from the origin or source of the income taxed. "

<u>1918:</u> Peck v. Lowe, 247 U.S. 165. Stated that the 16th Amendment does not extend the taxing power to new or excepted subjects, but removed the need to apportion direct taxes on income.

The plaintiff is a domestic corporation chiefly engaged in buying goods in the several states, shipping them to foreign countries and there selling them. In 1914 its net income from this business was $30,173.66, and from other sources $12,436.24. An income tax for that year, computed on the aggregate of these sums, was assessed against it and paid under compulsion. It is conceded that so much of the tax as was based on the income from other sources was valid, and the controversy is over so much of it as was attributable to the income from shipping goods to foreign countries and there selling them.

The tax was levied under the Act of October 3, 1913, c. 16, 11, 38 Stat. 166, 172, which provided for annually subjecting every domestic corporation to the payment of a tax of a specified per centum of its 'entire net income arising or accruing from all sources during the preceding calendar year.' Certain fraternal and other corporations, as also income from certain enumerated sources, were specifically excepted, but none of the exceptions included the plaintiff or any part of its income. So, tested merely by the terms of the act, the tax collected from the plaintiff was rightly computed on its total net income. But as the act obviously could not impose a tax forbidden by the

Constitution, we proceed to consider whether the tax, or rather the part in question, was forbidden by the constitutional provision on which the plaintiff relies.

The Sixteenth Amendment, although referred to in argument, has no real bearing and may be put out of view. As pointed out in recent decisions, it does not extend the taxing power to new or excepted subjects, but merely removes all occasion, which otherwise might exist, for an apportionment among the states of taxes [247 U.S. 165, 173] laid on income, whether it be derived from one source or another. Brushaber v. Union Pacific R. R. Co., 240 U.S. 1, 17-19, 36 Sup. Ct. 236, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414; Stanton v. Baltic Mining Co., 240 U.S. 103, 112-113, 36 Sup. Ct. 278.

1920: Evens v. Gore, 253 U.S. 245. Overturned by O'Malley v. Woodrough (307 U.S. 277). Court ruled that income taxes on federal judges were unconstitutional. "After further consideration, we adhere to that view and accordingly hold that the Sixteenth Amendment does not authorize or support the tax in question. " [A direct tax on salary income of a federal judge]

1920: Eisner v. Macomber, 252 U.S. 189. Defined income within the meaning of the 16th Amendment as "profit". Prohibited direct, unapportioned taxation of income of a stockholder. The Sixteenth Amendment must be construed in connection with the taxing clauses of the original Constitution and the effect attributed to them before the amendment was adopted.

In Pollock v. Farmers' Loan & Trust Co., 158 U.S. 601 , 15 Sup. Ct. 912, under the Act of August 27, 1894 (28 Stat. 509, 553, c. 349, 27), it was held that taxes upon rents and profits of real estate and upon returns from investments of personal property were in effect direct taxes upon the property from which such income arose, imposed by

reason of ownership; and that Congress could not impose such taxes without apportioning them among the states according to population, as required by article 1, 2, cl. 3, and section 9, cl. 4, of the original Constitution.

Afterwards, and evidently in recognition of the limitation upon the taxing power of Congress thus determined, the Sixteenth Amendment was adopted, in words lucidly expressing the object to be accomplished: The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among [252 U.S. 189, 206] the several states, and without regard to any census or enumeration.'

As repeatedly held, this did not extend the taxing power to new subjects, but merely removed the necessity which otherwise might exist for an apportionment among the states of taxes laid on income.

Brushaber v. Union Pacific R. R. Co., 240 U.S. 1 , 17-19, 36 Sup. Ct. 236, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414;

Stanton v. Baltic Mining Co., 240 U.S. 103 , 112 et seq., 36 Sup. Ct. 278;

Peck & Co. v. Lowe, 247 U.S. 165, 172 , 173 S., 38 Sup. Ct. 432.

A proper regard for its genesis, as well as its very clear language, requires also that this amendment shall not be extended by loose construction, so as to repeal or modify, except as applied to income, those provisions of the Constitution that require an apportionment according to population for direct taxes upon property, real and personal. This limitation still has an appropriate and important function, and is not to be overridden by Congress or disregarded by the courts. [.]

After examining dictionaries in common use (Bouv. L. D.; Standard Dict.; Webster's Internat. Dict.; Century Dict.), we find little to add to the succinct definition adopted in two cases arising under the Corporation Tax Act of 1909 (Stratton's Independence v. Howbert, 231 U.S. 399, 415 , 34 S. Sup. Ct. 136, 140 [58 L. Ed. 285]; Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185 , 38 S. Sup. Ct. 467, 469 [62 L. Ed. 1054]), 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets, to which it was applied in the Doyle Case, 247 U.S. 183, 185, 38 S. Sup. Ct. 467, 469 (62 L. Ed. 1054).

Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word 'gain,' which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived. 'Derived-from- capital'; 'the gain-derived-from-capital,' etc. Here we have the essential matter: not a gain accruing to capital; not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital, however invested or employed, and coming in, being 'derived'-that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal- that is income derived from property. Nothing else answers the description. [.]

Thus, from every point of view we are brought irresistibly to the conclusion that neither under the Sixteenth Amendment nor otherwise has Congress power to tax without apportionment a true stock dividend made lawfully and in good faith, or the accumulated profits behind it, as income of the stockholder. The Revenue Act of 1916, in so far as it imposes a tax upon the stockholder because of such dividend, contravenes the provisions of article 1, 2, cl. 3, and article 1, 9, cl. 4, of the Constitution, and to this extent is invalid, notwithstanding the Sixteenth Amendment.

1922: Bailey v. Drexel Furniture Co., 259 U.S. 20. Prohibited Congress from legislating or controlling benefits that employers provide to their employees. A major blow against socialism in America! "Out of a proper respect for the acts of a co-ordinate branch of the government, this court has gone far to sustain taxing acts as such, even though there has been ground for suspecting, from the weight of the tax, it was intended to destroy its subject. But in the act before [259 U.S. 20, 38] us the presumption of validity cannot prevail, because the proof of the contrary is found on the very face of its provisions. Grant the validity of this law, and all that Congress would need to do, hereafter, in seeking to take over to its control any one of the great number of subjects of public interest, jurisdiction of which the states have never parted with, and which are reserved to them by the Tenth Amendment, would be to enact a detailed measure of complete regulation of the subject and enforce it by a socalled tax upon departures from it. To give such magic to the word 'tax' would be to break down all constitutional limitation of the powers of Congress and completely wipe out the sovereignty of the states. "

**1924**: Cook v. Tait, 265 U.S. 47. The Supreme Court ruled that Congress has the power to tax the income received by a native citizen of the United States domiciled abroad from property situated abroad and that the constitutional prohibition of unapportioned direct taxes within the states of the union does not apply in foreign countries.

**1930**: Lucas v. Earl, 281 U.S. 111. The Supreme Court ruled that wages and compensation for personal services were not to be taxed in their entirety, but instead, the gain or profit derived indirectly from them.

**1935**: Railroad Retirement Board v. Alton Railroad Company, 295 U.S. 330. The Supreme Court ruled that Congress that it has no constitutional authority whatsoever to legislate for the social welfare of the worker. The result was that when Social Security was instituted, it had to be treated as strictly voluntary. "The catalog of means and actions which might be imposed upon an employer in any business, tending to the comfort and satisfaction of his employees, seems endless.

Provisions for free medical attendance and nursing, for clothing, for food, for housing, for the education of children, and a hundred other matters might with equal propriety be proposed as tending to relieve the employee of mental strain and worry.

Can it fairly be said that the power of Congress to regulate interstate commerce extends to the prescription of any or all of these things?

Is it not apparent that they are really and essentially related solely to social welfare of the worker, and therefore remote from any regulation of commerce as such? We think the answer is plain. These matters obviously lie outside the orbit of Congressional power."

**1938**: Hassett v. Welch, 303 U.S. 303. Ruled that disputes over uncertainties in the tax code should be resolved in favor of the taxpayer. "In view of other settled rules of statutory construction, which teach that... if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer..."

**1939**: O'Malley v. Woodrough, 307 U.S. 277. Overturned portions of Evens v. Gore, 253 U.S. 245, but not the part about the 16th Amendment. "However, the meaning which Evans v. Gore, supra, imputed to the history which explains Article III, 1 was contrary to the way in which it was read by other English-speaking courts.[1] The decision met wide and steadily growing disfavor from legal scholarship and professional opinion. Evans v. Gore, supra, itself was rejected by most of the courts before whom the matter came after that decision [2]"

**1945**: Hooven & Allison Co. v. Evatt, 324 US 652. Ruled that there are three distinct and separate definitions for the term "United States". The income tax only applies to one of the three definitions! "The term 'United States' may be used in any one of several senses. It may be merely the name of a sovereign occupying the position analogous to that of other sovereigns in the family of nations. It may designate the territory over which the sovereignty of the United States ex- [324 U.S. 652, 672] tends, or it may be the collective name of the states which are united by and under the Constitution."

**1959**: Flora v. United, 362 US 145. Ruled that our tax system is based on voluntary assessment and payment, not on force or coercion. "Our system of taxation is based upon voluntary assessment and payment, not upon distraint."

**1961**: James v. United States, 366 US 213, p. 213, 6L Ed 2d 246. Income that is taxed under the 16th Amendment must derive from a "source". Also established that embezzled money is taxable as income. "...the Sixteenth Amendment, which grants Congress the power "to lay and collect taxes on incomes, from whatever source derived."

Helvering v. Clifford, 309 US 331, 334; Douglas v. Willcuts, 296 US 1,9. It has long been settled that Congress' broad statutory definitions of taxable income were intended "to use the full measure of taxing power." The Sixteenth Amendment is to be taken as written and is not to be extended beyond the meaning clearly indicated by the language used." Edwards v. Cuba R. Co. 268 US 628, 631 [From separate opinion by Whittaker, Black, and Douglas, JJ.] (Emphasis added)

**1970**: Brady v. U.S., 397 U.S. 742 at 748. Supreme Court ruled that: "Waivers of Constitutional Rights not only must be voluntary, they must be knowingly intelligent acts, done with sufficient awareness of the relevant circumstances and consequences."

**1975**: Garner v. United States, 424 U.S. 648. Supreme Court ruled that income taxes constitute the compelled testimony of a witness: "The information revealed in the preparation and filing of an income tax return is, for the purposes of Fifth Amendment analysis, the testimony of a witness." "Government compels the filing of a return much as it compels, for example, the appearance of a `witness' before a grand jury."

**1978**: Central Illinois Public Service Co. v. United States, 435 U.S. 21. Established that wages and income are NOT equivalent as far as taxes on income are concerned.

"Decided cases have made the distinction between wages and income and have refused to equate the two in withholding or similar controversies.

Peoples Life Ins. Co. v. United States, 179 Ct. Cl. 318, 332, 373 F.2d 924, 932 (1967);

Humble Pipe Line Co. v. United States, 194 Ct. Cl. 944, 950, 442 F.2d 1353, 1356 (1971);

Humble Oil & Refining Co. v. United States, 194 Ct. Cl. 920, 442 F.2d 1362 (1971);

Stubbs, Overbeck & Associates v. United States, 445 F.2d 1142 (CA5 1971);

Royster Co. v. United States, 479 F.2d, at 390; Acacia

Mutual Life Ins. Co. v. United States, 272 F. Supp. 188 (Md. 1967)."

1985: U.S. v. Doe, 465 U.S. 605.

The production of evidence or subpoenaed tax documents cannot be compelled. "We conclude that the Court of Appeals erred in holding that the contents of the subpoenaed documents were privileged under the Fifth Amendment. The act of producing the documents at issue in this case is privileged and cannot be compelled without a statutory grant of use immunity pursuant to 18 U.S.C. 6002 and 6003."

1991: Cheek v. United States, 498 U.S. 192. Held that if the defendant has a subjective good faith belief no matter how unreasonable, that he or she was not required to file a tax return, the government cannot establish that the defendant acted willfully in not

filing an income tax return. In other words, that the defendant shirked a legal duty that he knew existed.

**1992**: United States v. Burke, 504 U.S. 229, 119 L Ed 2d 34, 112 S Ct. 1867.  Court held that income that is taxed under the 16th Amendment must come from a "source". Congress's intent through 61 of the Internal Revenue Code [26 USCS 61(a)]--which provides that gross income means all income from whatever source derived, subject to only the exclusions specifically enumerated elsewhere in the Code... and 61(a)'s statutory precursors..."

**1995**: U.S. v. Lopez, 000 U.S. U10287. Establishes strict limits on the constitutional power and jurisdiction of the federal government inside the 50 States. "We start with first principles. The Constitution creates a Federal Government of enumerated powers. See U.S. Const., Art. I, 8. As James Madison wrote, "[t]he powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite." The Federalist No. 45, pp. 292-293 (C. Rossiter ed. 1961). This constitutionally mandated division of authority "was adopted by the Framers to ensure protection of our fundamental liberties."

Gregory v. Ashcroft, 501 U.S. 452, 458 (1991) (internal quotation marks omitted). "Just as the separation and independence of the coordinate branches of the Federal Government serves to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." Ibid.

The Constitution delegates to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., Art. I, 8, cl. 3. The Court, through Chief Justice Marshall, first defined the nature of Congress' commerce power in Gibbons v. Ogden, 9 Wheat. 1, 189-190 (1824): "Commerce, undoubtedly, is traffic, but it is something more: it is intercourse. It describes the commercial intercourse between nations, and parts of nations, in all its branches, and is regulated by prescribing rules for carrying on that intercourse."

The commerce power "is the power to regulate; that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." Id., at 196. The Gibbons Court, however, acknowledged that limitations on the commerce power are inherent in the very language of the Commerce Clause.

"It is not intended to say that these words comprehend that commerce, which is completely internal, which is carried on between man and man in a State, or between different parts of the same State, and which does not extend to or affect other States. Such a power would be inconvenient, and is certainly unnecessary.

"Comprehensive as the word `among' is, it may very properly be restricted to that commerce which concerns more States than one. . .

. . . The enumeration presupposes something not enumerated; and that something, if we regard the language or the subject of the sentence, must be the exclusively internal commerce of a State." Id., at 194-195.

For nearly a century thereafter, the Court's Commerce Clause decisions dealt but rarely with the extent of Congress' power, and almost entirely with the Commerce Clause as a limit on state legislation that discriminated against interstate commerce. See, e.g., Veazie v. Moor, 14 How. 568, 573-575 (1853) (upholding a state-created steamboat monopoly because it involved regulation of wholly internal commerce); Kidd v. Pearson, 128 U.S. 1, 17, 20-22 (1888) (upholding a state prohibition on the manufacture of intoxicating liquor because the commerce power "does not comprehend the purely domestic commerce of a State which is carried on between man and man within a State or between different parts of the same State"); see also L. Tribe, American Constitutional Law 306 (2d ed. 1988). Under this line of precedent, the Court held that certain categories of activity such as "production," "manufacturing," and "mining" were within the province of state governments, and thus were beyond the power of Congress under the Commerce Clause. See Wickard v. Filburn, 317 U.S. 111, 121 (1942) (describing development of Commerce Clause jurisprudence). [.]

Consistent with this structure, we have identified three broad categories of activity that Congress may regulate under its commerce power. Perez v. United States, supra, at 150; see also Hodel v. Virginia Surface Mining & Reclamation Assn., supra, at 276-277. First, Congress may regulate the use of the channels of interstate commerce. See, e.g., Darby, 312 U.S., at 114 ; Heart of Atlanta Motel, supra, at 256. "`[T]he authority of Congress to keep the channels of interstate commerce free from immoral

and injurious uses has been frequently sustained, and is no longer open to question.'" [quoting Caminetti v. United States, 242 U.S. 470, 491 (1917)].

Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. See, e.g., Shreveport Rate Cases, 234 U.S. 342 (1914); Southern R. Co. v. United States, 222 U.S. 20 (1911) (upholding amendments to Safety Appliance Act as applied to vehicles used in intrastate commerce); Perez, supra, at 150 ("[F]or example, the destruction of an aircraft (18 U.S.C. 32), or . . . thefts from interstate shipments (18 U.S.C. 659)"). Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, Jones & Laughlin Steel, 301 U.S., at 37 , i.e., those activities that substantially affect interstate commerce. Wirtz, supra, at 196, n. 27.

**FEDERAL CIRCUIT COURT CASES:**

U.S. v. Tweel, 550 F.2d 297, 299-300 (1977) "Silence can only be equated with fraud when there is a legal or moral duty to speak, or when an inquiry left unanswered would be intentionally misleading... We cannot condone this shocking conduct...If that is the case we hope our message is clear. This sort of deception will not be tolerated and if this is routine it should be corrected immediately"

Lavin v. Marsh, 644 F.2nd 1378, 9th Cir., (1981) "Persons dealing with government are charged with knowing government statutes and regulations, and they assume the risk that government agents may exceed their authority and provide misinformation"

Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 9th Cir., (1981) "All persons in the United States are chargeable with knowledge of the Statutes-at-Large.. It is well established that anyone who deals with the government assumes the risk that the agent acting in the government's behalf has exceeded the bounds of his authority"

Economy Plumbing and Heating v. U.S., 470 F.2d 585 (Ct. Cl. 1972) "Persons who are not taxpayers are not within the system and can obtain no benefit by following the procedures prescribed for taxpayers, such as the filing of claims for refunds."

Long v. Rasmussen, 281 F. 236, at 238 "The revenue laws are a code or a system in regulation of tax assessment and collection. They relate to taxpayers, and not to non-taxpayers. The latter are without their scope. No procedures are prescribed for non-taxpayers, and no attempt is made to annul any of their rights and remedies in due course of law. With them Congress does not assume to deal, and they are neither the subject nor the object of the revenue laws."

Redfield v. Fisher, 292 P. 813, 135 Or. 180, 294 P.461, 73 A.L.R. 721 (1931) "The individual, unlike the corporation, cannot be taxed for the mere privilege of existing. The corporation is an artificial entity which owes its existence and charter powers to the state; but the individuals' rights to live and own property are natural rights for the enjoyment of which an excise cannot be imposed."

U.S. v. Ballard, 535 F2d 400, cert denied, 429 U.S. 918, 50 L.Ed.2d 283, 97 S.Ct. 310 (1976) "income" is not defined in the Internal Revenue Code

28

"Congress has taxed INCOME, not compensation." Conner v US 303 F Supp. 1187 (1969) "There is a clear distinction between `profit' and wages', or a compensation for labor. Compensation for labor (wages) cannot be regarded as profit within the meaning of the law. The word `profit', as ordinarily used, means the gain made upon any business or investment- - - a different thing altogether from the mere compensation for labor."

Treasury Order 150-1, Paragraph 5 States: "US Territories and Insular Possessions. "The commissioner shall, to the extent of authority otherwise vested in him, provide for the administration of the United States internal revenue law [ small i ] in the U.S. territories and insular possessions and OTHER AUTHORIZED AREAS OF THE WORLD."

TO's 150-1 thru 150- 29 are the Delegation of authority orders for the IRS from the Dept. Of Treasury. No section or paragraph is found in any of these which authorize the Commissioner to administer the internal revenue laws anywhere other than the above paragraph.

Bente v. Bugbee 137 A. 552, 553, 103 N. J. Law 608 . In that case the court held: A tax is a legal imposition exclusively of statutory origin (37 Cyc.724, 725), and, naturally, liability to taxation must be read in the statute, or it does not exist. (Emphasis added).

In State v. Chicago & N.W.R. Co., 112 N.W. 515, 520; 132 Wis. 345, quoting and adopting the definition in State v. Certain Lands in Redwood County, 42 N.W. 473, 40 Minn. 512, the court held: That a tax is a liability created by statute we think admits of no doubt, either upon principle or authority. (Emphasis added)

"The taxpayer must be liable for the tax. Tax liability is a condition precedent to the demand. Merely demanding payment, even repeatedly, does not cause liability". [Boathe v. Terry, 713 F.2d 1405, at 1414 (1983).]

US Supreme Court. So. Pacific v. Lowe, 247 U.S. 330 (1918) "income; as used in the statute should be given a meaning so as not to include everything that comes in."

House Congressional Record March 27th 1943, page 2580, by F. Morse Hubbard, Treasury Dept. legislative draftsman: "The income tax is, therefore, not a tax on income as such. It is an excise tax with respect to certain activities and privileges which is measured by reference to the income which they produce. The income is not the subject of the tax."

C.R.S. Report Congress 92-303A (1992) by John R. Lackey, Legislative attorney with the library of Congress: "When a court refers to an income tax as being in the nature of an excise, it is merely stating that the tax is not on the property itself, but rather it is a fee for the privilege of receiving gain from the property. The tax is based upon the amount of the gain, not the value of the property."

Murdock v. Pennsylvania 319 U.S. 105 480-487 (1943) "It could hardly be denied that a tax laid specifically on the exercise of those freedoms would be unconstitutional."

American Airways v. Wallace 57 F.2d 877, 880; "The terms "excise tax" and "privilege tax" are synonyous. The two are often used interchangeably."

Nicol v. Ames 173 U.S. 509 (1899): "A tax upon the privilege of selling property at the exchange, differs radically from a tax upon every sale made in any place." "A

sale at an exchange differs from a sale made at a man's private office or on his farm, or by a partnership, because, although the subject-matter of the sale may be the same in each case, there are at an exchange certain advantages, in the way of finding a market, obtaining a price, the saving of time, and in the security of payment, and other matters, which are more easily obtained there than at an office or a farm."

26 CFR §39.22(b)-1 (1956): "No other items may be excluded from gross income except (a) those items of income which are, under the Constitution, not taxable by the Federal Government."

Coppage v. Kansas 236 U.S. 1 (1915): "Included in the right of personal liberty and the right of private property- partaking of the nature of each- is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property."

Jack Cole Company v. Alfred T. MacFarland, Commissioner, 206 Tenn, 694, 337 S.W.2d 453 Supreme Court of Tennessee (1960): "Since the right to receive income or earnings is a right belonging to every person, this right cannot be taxed as privilege."

Simms v. Ahrens, 271 SW 720 (1925): "An income tax is neither a property tax nor a tax on occupations of common right, but is an excise taxThe legislature may declare as 'privileged' and tax as such for state revenue, those pursuits not matters of common right, but it has no power to declare as a 'privilege' and tax for revenue purposes, occupations that are of common right."

Pollock v. Farmers Loan & Trust, 157 U.S. 429 and 158 U.S. 601 (1895): "The power to tax real and personal property and the income from both, there being an apportionment, is conceded: that such a tax is a direct tax in the meaning of the Constitution has not been, and, in our judgment, cannot be successfully deniedOrdinarily, all taxes paid primarily by persons who can shift the burden upon some one else, or who are under no legal compulsion to pay them, are considered indirect [excise] taxes taxation on income is in its nature an excise entitled to be enforced as such."

Submitted this 5th day of June, 2013

Sandra Cote

Sandra Cote

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was mailed to the United States Attorney, at his/her respective office, Room 328, 450 Main Street, Hartford, Connecticut, and mailed to  The United States Department of Justice, Tax Division, CESN, PO Box 972, Washington, D.C. 20044  on this 5th day of June, 2013.


Signed : _Sandu Cate_